Martin Rosol v. Commissioner.
Rosol v. Commissioner
Docket No. 12412.
United States Tax Court
1948 Tax Ct. Memo LEXIS 228; 7 T.C.M. (CCH) 179; T.C.M. (RIA) 48044; March 30, 1948
*228 When petitioner inaugurated a sausage manufacturing and retailing establishment in 1928 his wife made available some of her personal funds which were used in the business. In the next few years she devoted some time and effort to promote the growth and success of the new venture. In 1939 she urged the creation of a partnership. A written "Partnership Agreement" was signed by petitioner on January 2, 1940, but was not executed by his wife until 1947. A promissory note representing her half interest in the business was also drafted on January 2, 1940, but was not signed by the latter until seven years later. Petitioner's wife contributed no independent capital or vital services and she did not share in the management of the business in 1940 and 1941. Held, no valid partnership existed in the taxable years because the parties never entered a definite agreement to become partners or share profits and losses, and the entire profits derived in the taxable years are taxable to petitioner. Samuel H. Platcow, Esq., and Francis R. Danaher, Esq., for the petitioner. Paul P. Lipton, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The Commissioner *229 determined deficiencies in income tax of $5,267.98 for the calendar year 1940, and $6,566.31 for the calendar year 1941, against petitioner Martin Rosol. Several minor adjustments to net income for these years are not in issue. Petitioner assigned as error reductions by the respondent of earned income credits for 1940 and 1941, but because he has made no further reference to this issue at the hearing or on brief, we assume it has been abandoned. The sole question for decision is whether for Federal income tax purposes recognition should be accorded a family partnership consisting of petitioner and his wife. Findings of Fact Petitioner and Helen Rosol, hereinafter referred to as the wife, are residents of New Britain, Connecticut. They both filed individual income tax returns for the calendar years 1940 and 1941 with the collector of internal revenue for the district of Connecticut. Petitioner and his wife were married on October 28, 1919, and have since had four children, as follows: Clara, born October 14, 1921; Eugenuisz, born April 28, 1923; Irene, born November 29, 1924; and Martin, Jr., born January 20, 1937. The wife was then employed by the Stanley Works in New Britain *230 and continued to work there for 19 months, earning from $25 to $30 a week. At the time of their marriage, petitioner was employed in his father-in-law's local meat market where he continued to work until the latter's death in February, 1923. Following their marriage the parties resided with the wife's parents for 19 months and, except for a short time, received free lodging and board. During this period they managed to save practically their entire salaries, which exceeded $2,000 in the case of the wife. On July 1, 1920, petitioner and his wife opened a joint savings account in the Savings Bank of New Britain, into which they deposited their respective earnings. During 1920, $600 was deposited in this account. During 1921, $645.33 was deposited, but $1,244 was withdrawn, which resulted in a net balance of $1.33 on December 31, 1921. In 1922, except for insignificant account adjustments totaling six cents, no money was deposited into or withdrawn from the account. In 1923, deposits by both parties totaled $2,123.81, but $1,000 was withdrawn, leaving a year-end balance of $1,125.20. As of July 1, 1924, deposits to date in that year totaled $630.40. On July 11, 1924, $1,300 was withdrawn, *231 which reduced the net balance to $355.60. Thereafter, numerous deposits of varying amounts were made which increased the balance on January 1, 1928, to a level of $10,030.52. Under the terms of her father's will, admitted to probate on February 26, 1923, petitioner's wife was bequeathed $1,000 which she received from her stepmother, executrix, in small amounts from time to time. The wife was also the beneficiary of an insurance policy on her father's life and received a check for the proceeds therefrom in the amount of $2,501.89 on March 6, 1923. Some of these moneys were deposited in the joint account heretofore mentioned. From 1923 to 1927, petitioner was employed as manager of the A.Y.O. Sausage Company of New Britain, Connecticut. In the latter part of 1927, petitioner's wife urged him to start his own business, to which he agreed. Thereupon, a garage, at 45 Silver Street in that city, was rented, equipped, and opened for business as a sausage factory in March, 1928. At the time the new business was commenced petitioner and his wife had no definite agreement or understanding with respect to the ownership of the business. From March 12, 1928, to May 15, 1928, three withdrawals, *232 totaling $9,500, were made from the joint savings account. These funds were deposited in a checking account in the local City National Bank, from which they were later drawn by petitioner's check for use in the business. All subsequent withdrawals from the joint account, which was closed out on May 12, 1937, were invested in the business. In getting the sausage business under way, petitioner and three employees prepared the meat products in the morning, after which petitioner and one helper went out in the afternoons to sell the merchandise. The wife came to work in the afternoons, receiving incoming supplies and assisting the other employees by wrapping and packing meats, preparing packing boxes, and washing dishes and barrels. She also received occasional orders for merchandise at home and made deliveries thereof. The parties continued this practice for the next three years, during which time they discussed the slow development of the business and gradually increased the number of workers to eight employees. From 1928 to 1932, no office records of receipts and disbursements were maintained. In July, 1932, Joseph M. Kessler, public accountant, was called upon to do the necessary *233 accounting work; he has continued to render auditing services for the business to date. Kessler set up regular business records as of July 1, 1932, and established a capital account for petitioner, in the amount of $27,585.28, as of that date. No capital account was set up for the wife at this time. Pursuant to his advice, in 1932 a bookkeeper was employed, after which the wife visited the factory two or three times a week and discussed the business with petitioner. Petitioner's wife opened a savings account in the Peoples Savings Bank, hereinafter called the Bank, on November 26, 1927, in the name of "Helen Rosol." On November 30, 1929, $10,000 was deposited in this account. The wife opened another savings account in the Bank, under the name of "Mary Helen Rosol," with a deposit of $10,000 on December 2, 1930. Both deposits consisted of money taken from the business but which was at all times available to the business whenever needed, and was, in fact, partially used to help finance a later expansion of facilities. On May 23, 1932, the wife closed these two individual savings accounts and transferred the remaining balances into two savings accounts in the Bank, under the names of *234 her two children, Irene and Eugenuisz. This was done in order to prevent attachment of funds in her own name, occasioned by her signature of a mortgage note for some friends. On May 27, 1933, $5,000 was withdrawn from the business and deposited by the wife in a savings account in the Berlin Savings Bank, Kensington, Connecticut, under the name of "Clara Rosol, Mrs. Helen Rosol, Trustee." This account was set up for the same reason; the money therein was not intended to belong to her daughter, Clara. After the repeal of Prohibition petitioner became interested in two breweries. In May, 1934, petitioner's wife withdrew $5,000 from each of the two savings accounts in the names of Irene and Eugenuisz Rosol by treasurers' checks payable to petitioner. This money was invested in Cremo Brewing Company bonds, payable to bearer. Petitioner became a director of the boards of directors of the Cremo Brewing Company of New Britain, Connecticut, and the Brockert Brewery of Worcester, Massachusetts, and from 1934 to 1939 was absent from the sausage factory two or three days a month in order to attend meetings thereof. On these occasions his wife attended the office until his return. In 1936, *235 it became evident that the premises were too small for the growing operation of the business. As a result, a parcel of land located at 45 Grove Street, New Britain, Connecticut, was purchased in that year from the town of New Britain for $4,500. Early in 1937 an architect was engaged to devise plans and specifications for the new plant. Construction of the building, installation of new machinery and office equipment, and the transfer of the business from the old to the new location, were completed later in the year at a total cost of approximately $70,000. Thereafter, the employees were gradually increased from 12 to 22. These matters were often discussed by petitioner and his wife. The Cremo Brewing Company bonds were sold and the proceeds were used to meet expenses of the new construction. Funds were also withdrawn from several bank accounts and invested in the expanded business, consisting of $6,089.03 from the savings account of Clara Rosol, Mrs. Helen Rosol, Trustee, on July 10, 1937, and the remaining balances in the two savings accounts in the names of Irene and Eugenuisz Rosol, on August 3, 1937, of $2,902.54 and $369.09, respectively. On January 1, 1937, petitioner's capital *236 account indicated a credit balance of $56,456.08. Petitioner invested $42,960.85 in the business on December 31, 1937, as additional capital which raised the credit balance of his capital account on that date to $99,416.93. From 1932 to 1939, inclusive, the entire capital was reflected on the business records as belonging to petitioner. No capital account was set up for the wife during this period. No partnership return was filed prior to 1940. Petitioner's wife filed no individual income tax return prior to 1940. The annual net income of the sausage business was reported by petitioner in his individual returns for 1936 and 1939 and in the joint returns of him and his wife for 1935, 1937, and 1938. In 1939, the wife became concerned about the liability of petitioner on a bond which he had signed to insure performance of a municipal contract by another party. On several earlier occasions petitioner had been forced to meet endorser liability on notes of other people. In order to protect herself against future endorsements by petitioner of other bonds or notes, the wife urged the formation of a partnership. Petitioner consulted Kessler who discussed possible tax savings through formation *237 of a partnership. Petitioner's attorney prepared a written partnership agreement, after consultation with the accountant, which was executed by petitioner on January 2, 1940, but was not signed by the wife until two weeks prior to her testimony in this proceeding. The instrument provided for capital contributions as follows: "2. The capital of said partnership shall be one Hundred forty-nine thousand eight hundred ninety-two dollars and thirty cents ($149,892.30) to be contributed by said partners in equal shares or in such other shares as may from time to time be agreed upon in writing. "The capital investment of Martin Rosol in the stock in trade, the plant, fixtures, machinery, implements, utensils in trade, goods, wares and merchandise and good will of said business belonging to the said Martin Rosol as evidenced by his financial statement as of December 31st, 1939, reads as follows: ASSETS
LIABILITIES
Current assets
$ 63,426.21
Current liabilities
$ 5,187.01
Fixed assets before de-
Reserve for depreciation
ducting depreciation
85,269.13
of fixed assets
14,465.18
Deferred charges
1,728.24
Martin Rosol capital
149,892.29
Investments
19,120.90
Total liabilities and
$169,544.48
capital
$169,544.48
*238 "The capital investment of said Martin Rosol as evidenced by the Statement above amounting to $149,892.30, shall constitute the total amount of assets with which the partnership shall begin business. "The said Helen Rosol shall pay for her one-half interest in said partnership the sum of Seventy-four thousand nine hundred forty-six dollars and fifteen cents ($74,946.15) by executing for same her promissory note in said amount, payable to the said Martin Rosol, which note shall be paid by the said Helen Rosol annually in the full amount of her share of the profits from said business after the deduction of a salary to the said Martin Rosol, in a sum to be mutually agreed upon by the partners annually. Said balance to be payable as aforesaid with interest at the rate of three percent (3%) annually when due." The "Partnership Agreement," as it was entitled, provided inter alia that only the petitioner could sign checks and notes affecting partnership property; that "Helen Rosol does not have to devote the whole of her time and attention to the partnership business and shall not be entitled to any salary"; that petitioner could hire and fire without the consent of his wife; that profits *239 would be shared equally after deduction of petitioner's salary, and again that as to the wife's share in the profits "the said Helen Rosol shall pay the full amount of such share in reduction of her note as aforesaid due to the said Martin Rosol." Another instrument, in the form of a promissory note, was prepared simultaneously with the agreement, which was not signed by the wife until two weeks prior to the date of her testimony herein. It reads as follows: "NOTE" "$74,946.15 New Britain, Connecticut January 2nd, 1940. "FOR VALUE RECEIVED, I promise to pay to the order of Martin Rosol, of the Town of New Britain, Connecticut, the sum of Seventy-four Thousand Nine hundred forty-six dollars and fifteen cents ($74,946.15) with interest at the rate of three percent (3%) payable annually when due. The principal sum shall be paid as follows: "After the annual accounting of the partnership business, doing business under the firm name of "MARTIN ROSOL GOLD BOND MEAT PRODUCTS," pursuant to a Partnership Agreement bearing even date herewith and to which the maker of this note is a partner, the full share of any profits due to the maker hereof from said partnership business, after *240 the deduction of all expenses, etc., including the salary of Martin Rosol, as provided in the aforementioned Partnership Agreement, shall be paid to Martin Rosol in reduction of the principal amount of this note each year. "/s/ Helen Rosol" Effective January 2, 1940, a capital account was established for the wife denoting her interest in the business which was valued at $74,946.15. The credit balance of petitioner's capital account was reduced from $149,892.29 to $74,946.14 as of the same date. During 1940 petitioner made occasional withdrawals totaling $9,297.99, in addition to a salary of $5,000. Petitioner's wife withdrew funds of $6,086.45 from her personal drawing account in this year. On December 31, 1940, $10,486.77 of her share of the business net income was credited to petitioner's capital account. The partnership net income for the calendar year 1940 was $38,670.43, as reported on a partnership return of income duly filed. Schedule J of this return also disclosed distributive shares of income in the amount of $21,768.72 [1] for petitioner, and $16,768.71 for his wife, which were reported in their respective individual income tax returns for 1940. *241 During 1941, petitioner made withdrawals from his personal drawing account in the total amount of $11,651.03, which included a $5,000 salary for his services. Petitioner's wife withdrew $2,223 in cash, while $11,893.73 of her distributable earnings for 1941 was credited to petitioner's capital account. The net income of the partnership for 1941 totaled $33,709.75. In their separate 1941 individual income tax returns petitioner and his wife reported their shares of income in the respective amounts of $19,288.38 [2] and $14,288.37. These same amounts were set forth in Schedule J of the partnership information return for 1941. In view of the fact that respondent's agents were disregarding the partnership status in computing petitioner's tax liabilities, petitioner's accountant advised him to incorporate the business. This change was made effective in July, 1946. In computing petitioner's tax liability for the taxable years here involved, respondent determined that no partnership existed between petitioner and his wife for purposes of Federal income tax and, therefore, that the income reported by the wife, $16,768.71 for 1940, and $14,288.37 for 1941, was taxable to petitioner. *242 Opinion ARUNDELL, Judge: The rule is well settled that a partnership may exist between a husband and wife where "* * * the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both * * *" and if each contributes independent capital or essential services or participates in management, or does all these things. ; . Petitioner takes the view that his wife was a bona fide partner in the taxable years on the ground that she invested $5,500 of her own money in the sausage factory in 1928, that she made a substantial contribution to the control and management of the business, and that she also performed vital additional services. As to the capital contribution, petitioner and his wife established a joint savings account in 1920, into which they deposited not only the former's earnings but also money belonging exclusively to the wife. Petitioner contends that the latter funds, in amount of $5,500 and consisting of earnings, insurance proceeds, and a bequest under her father's will, were invested in the business *243 in 1928. Even if the full amount of these proceeds was placed in the joint account, which is not clearly reflected in the banking records, the net balance in the account later dwindled to $355.60, more than three years prior to the alleged contributions in 1928. Also, there is no proof that any subsequent deposits were made by or for the wife. While we have no doubt that the $5,500 originated with the wife and that she turned over some of this money to petitioner for use in the business, it would appear from these facts that the proceeds so transferred were considerably less than the amount urged by petitioner. The evidence of record further discloses that petitioner's wife devoted some time and effort to the business in the early years of its existence and that she often discussed with petitioner matters related both to he daily conduct of the business and to its general expansion and development. Proof by petitioner of the investment of his wife's independent funds is not sufficient, however, to establish a valid partnership for tax purposes unless there is additional evidence showing a clear intention of the parties to conduct the business in partnership form. *244 March 16, 1948. Nor do we think that a family partnership predicated on either contributions to management or rendition of important services could be sustained in the absence of a like intention. The record herein does not reveal an express written agreement or an oral understanding between petitioner and his wife prior to 1940 to join in partnership or to share in profits and losses. A general feeling expressed by the wife that "Because we were partners in marriage so we took for granted we were partners in everything" is not an agreement sufficient to create a business arrangement between husband and wife for tax purposes. Moreover, the conduct of the parties during this period did not give rise to an implied agreement to this effect. While it is true that petitioner's wife helped out in the plant during the earlier years and also discussed some aspects of routine operations and plans for an enlargement in 1937, there is no showing that her participation is any different from that exhibited by many wives willing to devote some time and effort on an informal basis to promote the general welfare of the family. It appears that petitioner operated the enterprise as a sole proprietorship *245 from the very beginning. He drew all checks connected with the business affairs on a bank account in his own account in his own name. From 1928 to 1932, no bookkeeping system was maintained - the records consisted only of deposit books and bank statements. When an accountant was hired in 1932 for the purpose of setting up accounting records which would presumably disclose existing interests in the sausage business, he proceeded to set up a single capital account which reflected the exclusive ownership in petitioner from July 1, 1932, to December 31, 1939. Although sizeable amounts of money were withdrawn from the business and deposited in a bank account in the wife's name from time to time, the funds were always available for use in the business when required. It is also to be noted that no partnership returns or individual income tax returns for petitioner's wife were filed prior to 1940, nor is there any evidence showing that the alleged partnership status was made known to the business public. On balance, we are convinced that the facts and circumstances surrounding the operation of the business from 1928 to 1939, inclusive, negative an implied agreement between petitioner and *246 his wife to join in partnership. Therefore, in the absence of any agreement, formal or otherwise, we reach the conclusion that no bona fide partnership existed prior to 1940. Not only do the events transpiring in 1939 and later years support our conclusion that no valid partnership was created in prior years, but they further justify the conclusion that no bona fide partnership existed in the taxable years. In 1939 petitioner's wife became worried about an impending liability of petitioner as an endorser of some bonds and notes. In her own words she stated: "So we talked things over, and that was when we talked about forming this partnership, and in case we formed a partnership, he won't be allowed to sign the notes like he did. * * * So that is when we decided to form a partnership." After petitioner discussed the situation with his attorney, a written "Partnership Agreement" was prepared and executed by the former on January 2, 1940. The instrument was not signed and executed by the wife, however, until two weeks prior to her testimony herein, which was more than a year after the business was incorporated and long after receipt of the deficiency notice. There is no evidence *247 of essential services being rendered by the wife during the taxable years or of conduct of a managerial nature. The document provided that petitioner would transfer a half interest in the sausage business to his wife in exchange for a promissory note to be paid off with future earnings. Although the note was prepared simultaneously with the proposed agreement, it, too, was not executed by the wife until some time in November, 1947. The fact that petitioner and his wife saw fit to draft the written agreement which recognized no prior interest of the latter in the business assets would seem to be a significant indication that the parties themselves had never really considered the wife to have an earlier partnership interest. That the parties contemplated the purchase by the wife of a half interest is more like a sale than perpetuation of an existing arrangement. The fact that a large part of the earnings credited to her on the books in 1940 and 1941 were actually enjoyed by petitioner, is likewise inconsistent with the contention of a prior partnership relation. Finally, the agreement and the note were not signed by the wife until after this controversy arose and the corporate form *248 was adopted. In these circumstances, we are convinced that the validity of the partnership in the taxable years cannot be sustained by reason of any contribution of the wife in prior years. It must also fail not only because the wife did not share in control and management or render important services in 1940 and 1941, but also because her assignment of future partnership earnings in return for a one-half interest was not a contribution of capital for tax purposes. ; . Accordingly, respondent's nonrecognition of the partnership is affirmed. Decision will be entered under Rule 50. Footnotes
1. This sum includes salary of $5,000.↩
2. This amount includes a $ 5,000 salary for 1941.↩